IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARY BRETT MILLER                                                                PLAINTIFF

V.                                                     CAUSE NO.: 1:10CV020-SA-JAD

NORTH MISSISSIPPI MEDICAL CLINICS, INC.                         DEFENDANT

MEMORANDUM OPINION

Plaintiff filed this action alleging that Defendant discriminated against her on the basis of her sex and in violation of the Pregnancy Discrimination Act. Defendant filed a Motion for Summary Judgment [38] asserting that no genuine issues of material fact exist.

After reviewing the motion, response, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Mary Brett Miller was employed by the North Mississippi Medical Clinics ("Clinics") as a nurse practitioner in 2002. Initially, Miller only treated Clinics patients housed in two nursing homes in West Point, Mississippi. However, in 2004, Plaintiff was given the opportunity to work at West Point - Internal Medicine Associates ("WP-IPA") while Clinics attempted to recruit a fourth physician for that facility. Plaintiff continued making her nursing home rounds in addition to her new duties at WP-IMA. At that time, Plaintiff's husband, Dr. Ed Miller, was a full-time physician at WP-IMA.

In April of 2008, Plaintiff discovered that Dr. Miller was having an affair with a nurse employed by the hospital in West Point. In response, Plaintiff began discussing her husband's affair with co-workers at WP-IMA. She also hid her husband's false teeth, brought them to the WP-IMA, and showed co-workers on more than one occasion. Dr. Miller had to report to the hospital and clinic without his false teeth. During this time period, a corporate compliance complaint was filed

against Plaintiff alleging that she discussed her husband's affair with a patient at the WP-IMA clinic.

On October 12, 2008, Plaintiff went on leave because of pregnancy-related complications. She intended on returning to work March 1, 2009; however, prior to her return, Janet Angle, Regional Manager for North Mississippi Medical Clinics, Inc., and Misty Hollis, the office manager of WP-IMA, informed her that she would no longer be working at WP-IMA. Plaintiff resumed her nursing home rounds for Clinics in March.

Plaintiff filed an EEOC Complaint alleging sex and pregnancy discrimination. Once her Right to Sue letter was issued, she instituted this action. Defendant filed a Motion for Summary Judgment arguing that Plaintiff cannot meet her burden for proving sex and pregnancy discrimination. Thus, Defendant asserts, this case must be dismissed as a matter of law.

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'…that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by…affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*Discussion and Analysis*

*A. Sex Discrimination Claim*

Title VII of the Civil Rights Act of 1964 prohibits various forms of employment discrimination, including discrimination on the basis of sex. Urbano v. Continental Airlines, 138 F.3d 204, 205-206 (5th Cir. 1998). To establish a prima facie case of sex discrimination, Plaintiff must show that she: (1) is a member of a protected class, (2) was discharged, (3) was otherwise qualified for the position from which she was discharged, and (4) was either replaced by an individual outside her protected class or a similarly situated employee outside her protected class was treated more favorably under nearly identical circumstances. Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

Plaintiff's gender discrimination claim is based on her contention that she, as the wife of a cheating husband, was not "at fault," was terminated, while her husband was not disciplined in any way. For the limited purpose of the motion for summary judgment, Defendant does not contest the first three elements of Plaintiff's prima facie case. However, Defendant argues that Plaintiff was replaced by Jennifer McIntyre, a female, and Plaintiff is not similarly situated to Dr. Ed Miller.

3

"Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003); see also Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000); Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 561 (8th Cir. 1997). The Eleventh Circuit addressed a disparate treatment claim where the plaintiff was a bank teller supervisor and the proposed comparator was a bank teller. Mathis v. Wachovia Bank, 255 F. App'x 425, 431 (11th Cir. 2007). The court found that "[b]ecause of this relevant difference in positions and duties, the two were not similarly situated in all relevant aspects." Id.

Plaintiff was a part-time at-will employee of WP-IMA, while Dr. Ed Miller was a full-time contracted medical doctor at that clinic. Moreover, Dr. Miller had been employed with WP-IMA since 1994, while Plaintiff was a temporary part-time worker hired in 2004. Plaintiff asserts that she was similarly situated to Dr. Ed Miller because they performed "identical tasks" at WP-IMA, including treating patients, completing charts, writing prescriptions, and following up with patients' lab reports. According to Janet Angle, a nurse practitioner can treat a patient as long as he/she has at least one primary preceptor who is a Mississippi licensed physician that provides general supervision over the nurse practitioner, conducts quarterly audits of the nurse practitioner's charts to assess clinical quality, and authorizes the nurse practitioner's ability to prescribe drugs classified by the Federal Drug Enforcement Agency. A nurse practitioner must also have a protocol approved by the Mississippi Board of Nursing which requires the review and approval of the precepting physician and outlines the scope of medical services and treatment that he/she may provide. A nurse practitioner is required to practice within fifteen miles of a preceptor.

Plaintiff admitted that Dr. Miller, as well as the two other full-time physicians at WP-IMA supervised her work and acted as preceptors over her duties and responsibilities at WP-IMA. Dr. Miller and Plaintiff possessed different titles, degrees, levels of clinical oversight, tenure at WP-IMA, and overall years of practice. Therefore, Dr. Ed Miller is not a similarly situated comparator.

Moreover, the circumstances surrounding and conduct engaged in by Plaintiff and Dr. Miller are not "nearly identical." The Fifth Circuit has consistently explained that "for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" Bouvier v. Northrup Grumman Ship Sys., 350 F. App'x 917, 923 (5th Cir. 2009) (quoting Perez v. Texas Dep't of Criminal Justice, Inst'l Div., 395 F.3d 206, 213 (5th Cir. 2004). "Nearly identical" is not synonymous with "identical," and whether a similarly situated male was treated more favorably turns on whether the violations were of "comparable seriousness." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260-61 (5th Cir. 2009).

Defendant cites an incident that occurred on August 12, 2008, involving both Plaintiff and Dr. Miller in which those two had an argument in his office within hearing range of staff and patients. Janet Angle conveyed to both parties that discussion of their personal issues in the clinic was disruptive to patients and staff and continued disruptions would not be tolerated. Both Plaintiff and Dr. Miller agreed to no longer discuss their personal issues at the clinic. Misty Hollis, however, testified that several employees reported to her that Plaintiff was discussing her personal situation with the employees while at work at WP-IMA. One employee specifically mentioned that things would not get better unless the Plaintiff was out of the office. Others commented that they wished Plaintiff would quit talking about her issues in the office. Plaintiff clearly admits to discussing her

5

marital issues with her coworkers while at WP-IMA. Hollis also reported an incident to Janet Angle in which Plaintiff took and hid Dr. Miller's false teeth so he would have to report to work and see patients without them. Plaintiff admitted to taking the teeth on several occasions. Plaintiff brought the false teeth to WP-IMA, showed them to the staff, and laughed about it. In September of 2008, an anonymous complaint was lodged against Plaintiff through the North Mississippi Corporate Compliance hotline. The complainant relayed an incident in which Plaintiff discussed her marital issues with a patient at WP-IMA. Plaintiff admitted to discussing her husband's marital infidelity with a patient. She further stated that she had multiple patients ask her about the situation and admitted that she would respond to those inquiries.

Plaintiff contends that Dr. Miller engaged in similar disruptions at the WP-IMA. Aside from the August 12, 2008, incident, Plaintiff asserts that Dr. Miller went days without bathing and emanated an odor at work that was so offensive, employees sprayed him with Lysol. Moreover, Plaintiff cites an incident at the Clay County Medical Center in which Dr. Miller screamed at Darlene Cox, wife of Dr. John Cox, and blamed her for problems Plaintiff was having with her pregnancy. The incident did not occur at WP-IMA, and Darlene Cox never reported the incident to Clinics. Dr. John Cox requested that his wife not be assigned to work with Dr. Miller at Clay County Medical Center. That request was honored, but it was not made to the Defendant to this action. Dr. Cox was also confronted by Dr. Miller in the parking lot of WP-IMA after hours in October of 2008. Dr. Miller was adamant that Dr. Cox call the Clinics administrators and tell them to "mind their own business" with regard to his affair. Dr. Cox contends he reported this confrontation to Janet Angle and David Barber, but that no disciplinary action was taken against Dr. Miller. Janet Angle and

6

David Barber both testified that besides the August 12 incident, they did not receive any other reports about Dr. Miller discussing his and Plaintiff's marital issues at WP-IMA.

The Court finds that the incidents of disruption at WP-IMA by both Plaintiff and her husband are not nearly identical. At most, Dr. Miller can be credited with causing a scene at WP-IMA on August 12, 2008, and an after hours confrontation in the WP-IMA parking lot with another physician. These incidences do not rise to the level of Plaintiff's conduct of taking her husband's false teeth, bringing them into their mutual workplace, showing them to numerous co-workers, forcing him to see patients and be seen in WP-IMA without his teeth, and discussing with co-workers and patients the marital issues her and her spouse were having. Plaintiff's disruptions were clinic-wide and continuous, while Dr. Miller's confrontation was a single episode with a colleague after hours outside of the workplace. Thus, even if the Court were to find that Plaintiff and Dr. Miller were similarly situated in employment status, the incidents engaged in were not "nearly identical."

Even assuming Plaintiff met her prima facie burden, however, she is unable to overcome the remainder of the McDonnell-Douglas burden-shifting analysis. Once a plaintiff successfully establishes her prima facie case of discrimination, the defendant shall set forth its legitimate, non-discriminatory reason for its decision. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Okoye v. The Univ. Of Texas Houston Health Science Ctr., 245 F.3d 507, 512 (5th Cir. 2001). If the defendant produces a legitimate reason, "any presumption of discrimination raised by the plaintiff's prima facie case vanishes." Septimus, 399 F.3d at 609 (citing Okoye, 245 F.3d at 512). The plaintiff may, however, still avoid summary

7

judgment by demonstrating a genuine issue of material fact that the legitimate reasons proffered by the defendant were not the true reasons, but are instead a pretext for discrimination. Id.

Defendant contends that after Plaintiff's admission that she spoke with a patient about her marital issues, and in conjunction with her prior and continued inappropriate behavior, the persons who initially hired her, David Barber and Janet Angle, decided it would be best to discontinue using Plaintiff at the WP-IMA clinic because her presence and continued comments about her personal issues with Dr. Miller were disruptive to the clinic environment.

Plaintiff has failed to put forth any evidence that Defendant's proffered reason for the employment action was a pretext for sex discrimination. When the same individuals are responsible for hiring and terminating an individual, who was already a member of the protected class when hired, there is an inference that sex was not the reason for the termination. See Hervey v. Miss. Dep't of Educ., 2010 U.S. App. Lexis 25394, *15 (5th Cir. Dec. 13, 2010) (noting that it "hardly mak[es] sense for an employer to hire employees from a group against which it bears [] animus and then turn around and fire them once they are on the job").

Against this inference, Plaintiff contends that "[r]ather than take disciplinary actions against the person who was causing the problems, the male employee, Ed Miller, Defendant took action against the disfavored female employee." Further "[t]he male created the problem; the female got fired." Plaintiff has not put forth any evidence that the disruptions to the WP-IMA workplace were not the reason she was replaced. She was not removed because her husband had an affair and that was causing tensions at the clinic; she was replaced because of her bad judgment and continuing comments about her marital situation in the workplace.

8

Accordingly, Plaintiff's sex discrimination claim is DISMISSED for failure to meet her prima facie burden and put forth evidence that Defendant's proffered reason for replacing Plaintiff was a pretext for intentional discrimination because of her sex.

*B. Pregnancy Discrimination Claim*

With the passage of the Pregnancy Discrimination Act in 1978, Congress amended Title VII to state as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k).

A claim under the Pregnancy Discrimination Act is analyzed like Title VII discrimination claims in general. To establish a prima facie case of discrimination, the plaintiff may show: (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that others similarly situated were treated more favorably. Urbano, 138 F.3d at 206 (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Once the plaintiff presents a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the employment action. McDonnell-Douglas Corp., 411 U.S. 792, 802-805, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If the defendant is able to do so, the burden of production shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination. Id.

Here, the Defendant concedes for purposes of this motion that Plaintiff has met the first three requisites of her prima facie case of discrimination for pregnancy discrimination. Plaintiff contends that Jennifer McIntyre, the nurse practitioner who replaced Plaintiff, was not pregnant or on pregnancy-related leave, was treated more favorably than she. Jennifer McIntyre was hired to replace Plaintiff during her pregnancy-related leave and complete rounds at the nursing homes as well as at WP-IMA. Upon Plaintiff's return, McIntyre assumed a full-time position at WP-IMA and ceded the nursing home duties back to Plaintiff. Thus, to the extent that McIntyre was awarded a full-time position at WP-IMA while Plaintiff returned to her part-time position at the nursing homes, she conceivably could be considered to have been treated more favorably than the Plaintiff. Plaintiff has met her prima facie burden.

As noted above, Defendant contends that Plaintiff was not returned after her pregnancy-related leave to the part-time position at WP-IMA because of disruptions to that workplace caused by her presence. Plaintiff contends that her replacement at WP-IMA, and the reasons given by Defendant for that move are pretext for discrimination for her taking pregnancy-related leave. In order to succeed in proving pretext, Plaintiff must "disprove each non-discriminatory justification for her dismissal." McLaughlin v. W&T Offshore, Inc., 78 F. App'x 334, 338 (5th Cir. 2003) (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001)). Plaintiff must further provide "substantial evidence," not a mere scintilla, of the pretext. Laxton v. Gap, Inc., 333 F.3d 572, 579 (5th Cir. 2003).

As proof of pretext, Christie Morris claims Misty Hollis told her that Clinics was losing money from the nursing home business while Plaintiff was on maternity leave. In order for

workplace comments to provide evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002) (quoting Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 400-01 (5th Cir. 2000)).

Even assuming that Hollis' alleged comment was derogatory to Plaintiff's pregnancy-related leave, it is undisputed that Hollis had no authority over the employment decision to take Plaintiff out of WP-IMA. As office manager, Hollis supervised and managed the staff and operations of the clinic; however, Janet Angle is the supervisor for clinic physicians and nurse practitioners. Janet Angle and David Barber made the decision to stop using Plaintiff at WP-IMA. Further, the statement is not related to the employment decision at issue. Angle and Barber's decision did not adversely affect Plaintiff's duties for Clinic's nursing home patients. Therefore, Hollis' alleged statement is not explicit proof of intentional discrimination based on Plaintiff's taking pregnancy-related leave.

Plaintiff contends her case is similar to EEOC v. Yenkin-Majestic Paint Corp., 112 F.3d 831 (6th Cir. 1997), in that she was replaced by someone much less qualified with no history of pregnancy. This case is inapposite to Plaintiff's situation. In that case, once the employee informed her employer that she was pregnant, the supervisor began issuing unfavorable evaluations, and the corporation underwent "restructuring" which abolished the plaintiff's position. Id. at 834. Instead of considering the plaintiff for a technical secretary position available on the basis that she was

11

unqualified, the employer terminated her and subsequently hired another secretary with admittedly even less technical knowledge than the plaintiff had. Id. at 834-35. The employer had no other justification for not retaining plaintiff other than her pregnancy.

Here, Plaintiff's position was not abolished at WP-IMA. Clinics simply chose to continue using the nurse practitioner hired to complete Plaintiff's duties at WP-IMA during her pregnancy-related leave. There is no proof that Jennifer McIntyre was any less qualified than Plaintiff as a nurse practitioner.

Plaintiff has never denied talking to her co-workers at WP-IMA about her marital issues, taking her husband's teeth and showing them to co-workers, or talking to patients about her husband's extra-marital affair. Thus, she has failed to produce evidence that Defendant's stated reasons for her replacement were pretext for pregnancy-related discrimination.

It is undisputed that the decision to discontinue Plaintiff's position at WP-IMA was made prior to Plaintiff's need for pregnancy-related leave. Further, at least two other WP-IMA employees have taken pregnancy-related leave since January of 2008, and both have returned to their positions. Misty Hollis took two pregnancy-related leaves within eighteen months and remains employed in her prior position at WP-IMA to this day.

Accordingly, that claim must be DISMISSED for failure to meet the burden imposed by McDonnell-Douglas.

*Conclusion*

Plaintiff failed to prove her prima facie case of sex discrimination against Defendant. She cannot show that Dr. Ed Miller was similarly situated or that circumstances surrounding him were "nearly identical." Plaintiff also did not prove Defendant's reasons to be pretext for intentional discrimination.

Plaintiff met her prima facie burden for her pregnancy discrimination claim, but failed to proffer evidence of pretext on Defendant's part.

Accordingly, Plaintiff's claims are dismissed, and this case is closed.

SO ORDERED, this the 2nd day of May, 2011.

                                             **/s/ Sharion Aycock**
                                             **U.S. DISTRICT JUDGE**